UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RODNEY JONES, SR.,

                        Plaintiff,

    -vs-                            **No. 6:17-CV-06396 (MAT)**
                                        **DECISION AND ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

**I. Introduction**

Represented by counsel, plaintiff Rodney Jones, Sr. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of defendant the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**II. Procedural History**

Plaintiff protectively filed applications for DIB and SSI on December 17, 2013, alleging disability as of September 1, 2012 due to depression, diverticulitis, gastroesophageal reflux disease ("GERD"), erectile dysfunction, insomnia, and high blood pressure. Administrative Transcript ("T.") 74-75. Plaintiff's applications

were initially denied. T. 109-112. At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John P. Costello on January 5, 2016, at which Plaintiff appeared with his attorney. T. 35-73. Prior to the hearing, Plaintiff's attorney sent a brief to the ALJ explaining that Plaintiff was claiming the severe impairments of: psychosis, not otherwise specified; schizoaffective disorder; left rotator cuff tendinitis with musculoskeletal stiffness; diverticulosis; headache disorder; and immaterial, co-occurring cannabis abuse. T. 285.

On April 28, 2016, the ALJ issued an unfavorable decision. T. 15-34. On April 27, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision. T. 1-6. This action followed.

**III. The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2015. T. 20. At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2012, the alleged onset date. *Id*.

At step two, the ALJ found that Plaintiff suffered from the severe impairments of left shoulder impingement, depression, and cannabis abuse. *Id.* The ALJ further found that Plaintiff had the

2

non-severe impairments of hypertension, diverticulitis, and GERD. T. 20-21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. T. 21. The ALJ particularly considered Listings 12.04 and 12.09 in making that determination. T. 21-22.

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following additional limitations: can have only occasional interaction with coworkers and the general public; and can only perform simple, routine tasks. T. 22.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. T. 28. At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of hand packager and auto detailer. T. 28-29. Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. T. 29.

**IV. Discussion**

    **A. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual

3

findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Here, Plaintiff argues that (1) the ALJ erred at step two by failing to find that he had a severe impairment of headache disorder, (2) the ALJ diminished and mischaracterized the mental health treatment notes of record, resulting in an RFC finding not based on substantial evidence, and (3) the ALJ failed to provide good reasons for discounting the opinions of treating physician Dr. Matthew Thomashefski. For the reasons set forth below, the Court finds these arguments to be without merit.

4

## B. Step Two Analysis

Plaintiff's first argument is that the ALJ erred at step two, because he did not find that Plaintiff's headache disorder was a severe impairment. Plaintiff further contends that this error continued at steps four and five, where the ALJ failed to consider limitations associated with Plaintiff's headache disorder in ascertaining his RFC and considering his ability to perform work available in the national economy.

At step two of the analysis, the ALJ must consider a claimant's medically determinable impairments and decide whether they are "severe." A "severe" impairment is "one that significantly limits a claimant's ability to perform basic work activities," such as "walking, standing, sitting, lifting, [etc.], [c]apacities for seeing, hearing, and speaking, and [u]nderstanding, carrying out, and remembering simple instructions." *Faison v. Berryhill*, No. 16-cv-06044(MAT), 2017 WL 3381055, at *2 (W.D.N.Y. Aug. 5, 2017) (internal quotations and citations omitted). Notably, "[i]t is the claimant's burden to show at step two that she has a severe impairment." *Rye v. Colvin*, No. 2:14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe. *Id.* at *4 (declining to remand where the plaintiff did not "specify why each of these impairments [that he contended were omitted at step two] meets the regulatory definition of a 'severe' impairment").

5

Moreover, "[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." *Snyder*, 2014 WL 3107962 at *5.

In this case, Plaintiff has failed to demonstrate that his claimed headache disorder was a severe impairment. While Plaintiff did complain of headaches at certain points throughout the relevant time period, neurological examinations were normal. *See* T. 367, 375, 378-79. Moreover, Plaintiff declined prescription medication for his headaches when it was offered by his physicians. T. 374.

6

Plaintiff's physicians also noted on multiple occasions that they believed his headaches were related to his other conditions. *See* T. 375, 386-87, 460. Dr. Thomashefski noted that Plaintiff's headaches did not have any "alarming signs" and were likely related his depression, and treated them by increasing Plaintiff's anti-depressants. T. 387. Indeed, the increase in Plaintiff's Remeron dosage apparently did improve his headaches, as he did stopped complaining of them in late 2014. T. 451, 456. Dr. Thomashefski noted in March 2015 that Plaintiff's headaches had improved due to medication and had returned when he stopped taking them. T. 460. In April 2015, Plaintiff told Dr. Thomashefski that he was not having headaches. T. 476. On March 10, 2016, Plaintiff reported to social worker Mary MacLeod that his headaches had "disappeared" when he began taking his medications again. T. 837.

The medical evidence of record does not show that Plaintiff's headaches impacted his ability to perform work-related functions. To the contrary, the medical evidence shows that Plaintiff's headaches are related to his psychiatric condition and that they "disappear" when he is appropriately medicated. As such, Plaintiff has not demonstrated that his headache disorder was a severe impairment.

Plaintiff also has not demonstrated that the ALJ should have included any additional limitations in his RFC analysis as a result of Plaintiff's headaches. As discussed above, Plaintiff's headaches ceased when he took his psychiatric medications as prescribed. Plaintiff has not proffered any explanation for how headaches that

7

are completely controlled by medication might interfere with his work-related abilities. As such, any error by the ALJ at step two in failing to discuss Plaintiff's headache disorder was harmless and does not necessitate remand.

### C. Consideration of Psychiatric Records

Plaintiff's next argument is that the ALJ mischaracterized and diminished the medical records regarding his mental health treatment, which resulted in a failure to include necessary mental limitations in the RFC finding. The Court disagrees, and finds no error in the ALJ's discussion of Plaintiff's mental health.

The ALJ in this matter thoroughly considered the evidence of record related to Plaintiff's mental health. As the ALJ noted, Plaintiff's primary care physician began prescribing him anti-depressants in August 2013, but Plaintiff declined counseling at that time. T. 23 (referring to T. 372-73). Upon physical examination in November 2013, Plaintiff was negative for any psychiatric or behavioral symptoms and had normal mood, affect, behavior, judgment, and thought content. T. 378-79.

In December 2013, Plaintiff reported auditory and visual hallucinations of his deceased parents to Dr. Thomashefski. T. 385. Dr. Thomashefski referred Plaintiff to a psychiatrist, although Plaintiff was "resistant" to the idea. T. 386. In January 2014, Plaintiff underwent an evaluation by social worker Carle Sue Boseman, due to a report of suicidal ideation. T. 389-90. Plaintiff told Ms. Boseman that he found his hallucinations of his parents "comforting." T. 390. Ms. Boseman stated that Plaintiff's

symptoms were "mild and controlled." *Id*. Plaintiff denied suicidal thoughts, and indicated that he was open to treatment options because he wanted to get better. *Id*. A mental status examination was largely normal, though Plaintiff did have a depressed and blunted affect and circumstantial thought processes. T. 391. It was noted that Plaintiff had seen a psychiatrist earlier in the month and that no medications were recommended. T. 393. Plaintiff refused an offer of voluntary hospital admission. T. 395.

In late January 2014, Dr. Thomashefski noted that Plaintiff's depression was stable, and that his PHQ-9[1] score had decreased. T. 399. In October 2014, Plaintiff reported an improvement in his mood, but his PHQ-9 score had increased to 14. T. 450-51. Nevertheless, Dr. Thomashefski indicated that he was hesitant to make any medication changes because Plaintiff was "feel[ing] so well." T. 451. Dr. Thomashefski further noted that Plaintiff continued to be reluctant to see any other providers regarding his depression. *Id*. Dr. Thomashefski again described Plaintiff's depression as "stable" in December 2014. T. 456.

In April 2015, Plaintiff expressed an interest in mental health treatment and medication for his hallucinations. T. 465. Plaintiff began this treatment on April 23, 2015 (*see* T. 733-40), and the record shows that it was generally successful. Although Plaintiff initially struggled to take his medications as prescribed, by August 2015, Plaintiff reported he was consistently

---

[1] The PHQ-9 is a screening questionnaire use to assess the severity of depression.

9

compliant with his medication and had only minimal psychiatric symptoms. T. 779. On August 31, 2015, Plaintiff's mental health counselor noted that he was in an upbeat mood and reported "no symptoms to speak of." T. 785. Plaintiff was compliant with his medication and "future focused and optimistic." *Id*. Plaintiff continued to be "optimistic and future focused" at an appointment in October 2015, and had "no acute symptoms of disordered mood or thought." T. 795. On November 3, 2015, Plaintiff denied experiencing any symptoms of psychosis, and continued to take his medications as prescribed. T. 809-810. As of December 2015, Plaintiff had obtained financial aid and was planning to start classes at Monroe Community College ("MCC") in the spring. T. 814. Plaintiff reported that things were going well and he had no issues or concerns. *Id*. By February 2016, Plaintiff had indeed begun taking classes. T. 819.

As the ALJ in this case correctly found, the medical evidence of record in this case, as summarized above, shows significant improvement in Plaintiff's mental health, particularly from April 2015, when he followed his physician's recommendation to seek counseling. Indeed, Plaintiff himself testified at the hearing in this matter that he felt better as a result of his therapy and medication and that he was "okay" and would be "fine" as long as he continued his treatment. T. 52. The ALJ nevertheless included mental health limitations in his RFC finding, limiting Plaintiff to simple, routine tasks and only occasional interactions with coworkers and the general public. T. 22. The Court finds no error

10

in this conclusion, which is fully consistent with the opinion of psychiatric consultative examiner Dr. Adam Brownfeld, who thoroughly examined Plaintiff on March 11, 2014, and opined that his only limitation was a "mild to moderate" limitation in dealing with stress. T. 360-63. Plaintiff has failed to identify any other medical evidence supporting additional mental limitations.

Plaintiff takes issue with the ALJ's discussion of his PHQ-9 scores, claiming that the ALJ ignored those occasions on which his scores were elevated. This argument lacks support in the record. The ALJ expressly discussed the fact that there were fluctuations in Plaintiff's PHQ-9 score, but noted that Dr. Thomashefski had nevertheless described his depression as stable and that there was a correlation with Plaintiff's failure to take his medications. T. 25. Moreover, the medical record in fact shows that, as Plaintiff sought treatment and was appropriately medicated, his PHQ-9 scores improved from showing moderate-to-severe depression to showing mild-to-moderate depression. *See* T. 841-43, 892-93 (showing that Plaintiff's PHQ-9 scores went from being between 14 and 25 in 2013 and 2014 to being between 8 and 11 in 2015). The Court accordingly finds no error in the ALJ's discussion of Plaintiff's PHQ-9 scores.

Plaintiff also contends that the ALJ ignored records showing that Plaintiff occasionally had abnormal findings on mental status examination. The Court disagrees. The ALJ noted that Plaintiff's mental status exams were "generally" normal after he began mental health treatment. T. 25. This is an accurate summary of the

11

medical evidence, which shows only sporadic and minor abnormalities. The ALJ was not required to specifically recite the results of each individual mental status examination. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) (an ALJ is "not required to mention or discuss every single piece of evidence in the record").

Finally, Plaintiff argues that the ALJ improperly found that he had switched care providers because his physicians would not comply with his demands for specific treatment. Again, the Court finds no error in this determination. While it is true that Plaintiff's stated reason for switching providers was that he wanted someone who focused more on the intersection between mental and physical health (*see* T. 749), the record is replete with references to Plaintiff's repeated demands that he be provided with the specific medications he desired. For example, on May 26, 2015, Dr. Thomashefski reported that Plaintiff had stated that he was taking his sister's percocet and had become angry when Dr. Thomashefski would not provide him with his own prescription. T. 482. At a therapy session on June 29, 2015, Plaintiff was again angry and refused to discuss anything other than not being prescribed the pain medication he wanted. T. 765. Similarly, at an appointment with a nurse practitioner on June 30, 2015, Plaintiff was "very focused on obtaining stronger medication." T. 769. Plaintiff's therapist noted that he felt "entitled" to the specific medications he requested. T. 776. It was reasonable for the ALJ to conclude, based on these repeated references to

Plaintiff's demands and his anger when they were not complied with, that his decision to switch providers was related thereto.

In sum, the Court does not find that the ALJ mischaracterized or diminished Plaintiff's mental health treatment. To the contrary, the ALJ appropriately considered and discussed the record, and reached reasonable conclusions based upon it. Accordingly, remand of this matter is not warranted.

**D. Assessment of Dr. Thomashefksi's Opinions**

Plaintiff's final argument is that the ALJ failed to properly assess Dr. Thomashefski's opinions regarding his capabilities. The Court finds, for the reasons set forth below, that the ALJ's assessment of Dr. Thomashefski's opinions was not erroneous.

Under the Commissioner's regulations in place at the time the ALJ issued his decision, a treating physician's opinion is generally entitled to controlling weight when if is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not otherwise inconsistent with the substantial evidence of record. *See Green-Younger*, 335 F.3d at 106. If, acting within his discretion, an ALJ assigns less than controlling weight to a treating physician's opinion because it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical

signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" when determining what weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004)).

In this case, the ALJ considered two opinions authored by Dr. Thomashefski. The first was dated January 9, 2014 and indicated that Plaintiff was unable to participate in work-type activities for 12 months due to depression. T. 502-504. Dr. Thomashefski also noted that Plaintiff "state[d] he can't be on his feet or sit for too long." *Id*. Dr. Thomashefski indicated that Plaintiff had difficulty squatting due to back pain and opined that he would be very limited in walking, standing, sitting, pushing, pulling, pending, lifting, and carrying, and moderately limited in seeing, hearing, and speaking. T. 504.

On February 4, 2015, Dr. Thomashefski issued another opinion. T. 506-508. In this opinion, Dr. Thomashefski indicated that Plaintiff would be very limited (defined as unable to function 25% or more of the time) in his abilities to maintain attention and concentration for rote tasks, and to perform low stress and simple tasks. T. 508. Dr. Thomashefski further opined that Plaintiff

14

would be moderately limited (defined as unable to function 10-25% of the time) in his abilities to follow, understand, and remember simple instructions and directions, to perform simple and complex tasks independently, to regularly attend to a routine and maintain a schedule, and to maintain basic standards of hygiene and grooming. *Id*.

In his decision, the ALJ gave Dr. Thomashefski's opinions little weight. T. 26-27. The ALJ explained that the January 2014 opinion was inconsistent with Dr. Thomashefski's treatment notes and based upon Plaintiff's unreliable subjective complaints. T. 26. With respect to the February 2015 opinion, Dr. Thomashefski explained that it was internally inconsistent and inconsistent with Dr. Thomashefski's treatment notes. T. 27.

The Court finds no error in the ALJ's assessment of Dr. Thomashefski's opinions. First, an ALJ is permitted to afford less than controlling weight to opinions that are inconsistent with contemporaneous treatment records. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (finding that it is permissible for an ALJ to afford less than controlling weight to an treating physician's opinion where "it was contrary to his own treatment notes"); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) ("Because [the treating physician's] medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight."). In this case, as the ALJ noted, Dr. Thomashefski had never treated Plaintiff for any back-related problems before opining that he had serious

15

limitations in walking, sitting, standing, pushing, pulling, lifting, and carrying, nor did the treatment records support these limitations. To the contrary, a physical examination of Plaintiff in November 2013 showed that Plaintiff was in no acute distress and had no spinal tenderness. T. 381.

The ALJ also permissibly noted that, because he had not treated Plaintiff for any back-related complaints, it appeared that Dr. Thomashefski was merely relating Plaintiff's subjective complaints. An ALJ may reject an opinion that is nothing more than a provider's "recording of [the claimant's] own reports of pain." *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014). This is particularly true where, as in this case, the ALJ has appropriately found that the claimant is not credible. *See Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012); *see also Harris v. Astrue*, No. 10 CIV. 6837 GBD THK, 2012 WL 995269, at *3 (S.D.N.Y. Mar. 26, 2012) (treatment provider's opinion properly discounted where it was "based primarily on Plaintiff's unreliable self-reported symptoms").

Moreover, an ALJ may reject a treating physician's opinion where it is internally inconsistent. *See Micheli v. Astrue*, 501 F. App'x 26, 28-29 (2d Cir. 2012) (substantial evidence supported ALJ's decision not to accord controlling weight to treating physician's opinion where it was internally inconsistent). In this case, as the ALJ noted, there was a plain internal inconsistency in Dr. Thomashefski's opinion, because he opined that Plaintiff was very limited in his ability to perform low stress and simple tasks,

but only moderately limited in his ability to perform complex tasks independently. This inconsistency was a proper basis for the ALJ to rely on in affording the opinion less than controlling weight.

The ALJ was also not required to recontact Dr. Thomashefski because of this internal inconsistency. "The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician." *Micheli*, 501 F. App'x at 29. Where, as here, the evidence is sufficient to permit the ALJ to make a well-supported determination of the claim, the ALJ is not required to recontact the treating physician.

For the foregoing reasons, the Court finds that the ALJ appropriately considered and weighed Dr. Thomashefski's opinion. Accordingly, Plaintiff has failed to demonstrate that remand of this matter is warranted.

**V. Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 10) is denied. The Commissioner's motion for judgment on the pleadings (Docket No. 12) is granted. The Clerk of the Court is directed enter judgment in favor of the Commissioner and to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                            **S/Michael A. Telesca**

                                          HON. MICHAEL A. TELESCA
                                          United States District Judge

Dated:    August 13, 2018
            Rochester, New York.